# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

[Filed Electronically]

**BRANDON BRANHAM,**                                                     **PLAINTIFF**

v.

**CORRECTHEALTH KENTUCKY, LLC**           3-15-cv-647-JH

  Serve: **CT CORPORATIONS SYSTEM**
         **306 W. MAIN STREET**
         **SUITE 512**
         **FRANKFORT, KY 40601**

and

**CORRECTHEALTH LARUE, LLC**

  Serve: **Via Kentucky Secretary of State**
         **3384 PEACHTREE ROAD, NE**
         **SUITE 700**
         **ATLANTA, GA 30317**

and

**LARUE COUNTY, KENTUCKY**

  Serve: **Tommy Turner, Judge/ Executive**
         **209 W. HIGH ST.**
         **HODGENVILLE, KY 42748**

and

**JOHNNY COTTRILL, in his individual capacity as LaRue County Jailer**

  Serve: **Johnny Cottrill**
         **209 W. HIGH ST.**
         **HODGENVILLE, KY 42748**

and

**JOHN and JANE DOES, Nos. 1-10, individually, and specifically identified as all officers and/or staff members of the LaRue County Jail having contact with Plaintiff from August 12, 2014 to August 14, 2014,**

**and**

**JOHN and JANE DOES, Nos. 11-20, individually, and specifically identified as all medical personnel in the employ of LaRue County and/or CorrectHealth having contact with Plaintiff from August 12, 2014 to August 14, 2014,**

**and**

**RICHARD or ROBERTA ROE, M.D., individually, and specifically identified as all physicians having contact with or consulting regarding Plaintiff during his incarceration at the LaRue County Jail from August 12, 2014 to August 14, 2014,**

**and**

**RICHARD or ROBERTA ROE, ARNP, individually, and specifically identified as all ARNPs having contact with or consulting regarding Plaintiff during his incarceration at the LaRue County Jail from August 12, 2014 to August 14, 2014, including but not limited to the ARNP whose signature appears on the document attached hereto as Exhibit A**                                    **DEFENDANTS**

## COMPLAINT

### I. Introduction

1. Plaintiff Brandon Branham complains of his egregious and unjustifiable treatment by Defendants named in the caption above. As more specifically set forth below, Plaintiff, while

at the LaRue County Detention Center ("the Jail") was subjected to Defendants' deliberate indifference to his medical needs and, as a consequence, was subjected to wanton and unnecessary mental and physical pain, suffering, and anguish, and now suffers from seizures and paralysis. It is the purpose of this action to recover the actual damages Plaintiff sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. Jurisdiction and Venue

2. **P**laintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of his rights, privileges and immunities guaranteed by the Tenth and Fourteenth Amendments to the Constitution of the United States.

3. This Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343.

4. Plaintiff also seeks damages for negligence and/or gross negligence.

5. LaRue County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. Parties

6. Plaintiff was at all times relevant herein in the care and custody of Defendants below.

7. Defendants CorrectHealth Kentucky, LLC, and CorrectHealth LaRue, LLC (referred to collectively as "CorrectHealth"), at all times mentioned herein, were private, insured corporations responsible for employing, contracting with, training, supervising and otherwise providing medical personnel including, but not limited to, physicians, nurse practitioners, and nurses, and for creating customs, policies, practices, and procedures which their medical

3

personnel, as well as other jail personnel, were to adhere to in providing health care services to inmates in the LaRue County Jail.

8.      Defendant LaRue County at all times mentioned herein, was responsible for the establishment of policies, practices and procedures, either formally or by custom for, and for the employment, training, supervision and conduct of, the employees, contractors, and other personnel of the Jail.

9.      Defendant Johnny Cottrill was at all times mentioned herein acting individually and/or in his official capacity as Jailer of the LaRue County Detention Center, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees, contractors, and other personnel of the Jail, and directly participated in the mistreatment of Plaintiff described below.

10.     Defendant Richard or Roberta Roe, M.D., were the physicians at the Jail responsible for attending to the medical needs of Plaintiff, established policies either formally or by custom for, and were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Jail who were supposed to attend to Plaintiff's medical needs, and personally participated in the mistreatment of Plaintiff during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

11.     Defendant(s) Richard and/or Roberta Roe, ARNP, was/were the Advanced Registered Nurse Practitioners at the Jail responsible for attending to the medical needs of Plaintiff, established policies either formally or by custom for, and were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Jail who were supposed to attend to Plaintiff's medical needs, and personally participated

in the mistreatment of Plaintiff during his incarceration at the Jail from August 12, 2014 to August 14, 2014. One is the person whose signature appears on Exhibit A to this complaint.

12. Defendants John or Jane Does 1-10 were officers and/or staff members of the LaRue County Jail who were responsible for attending to the medical needs of Plaintiff, established policies either formally or by custom for, and/or were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Hospital who were supposed to attend to Plaintiff's medical needs, and/or personally participated in the mistreatment of Plaintiff during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

13. Defendants John or Jane Does 11-20 were the medical personnel at the LaRue County Jail, employed either by CorrectHealth or by the Jail itself, who were responsible for attending to the medical needs of Plaintiff, established policies either formally or by custom for, and/or were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Hospital who were supposed to attend to Plaintiff's medical needs, and/or personally participated in the mistreatment of Plaintiff during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

### IV. Nature of Defendants' Conduct

14. At all times relevant to this Complaint, all Defendants were acting under color of state law.

15. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below.

16. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Plaintiff and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages Plaintiff is entitled to recover.

### V. Facts

17. Om or about August 12, 2014, the Plaintiff was arrested for a probation violation. Because he was unconscious and exhibited signs of drug use at the time of the arrest, he was taken first to Hardin Memorial Hospital for treatment.

18. After Plaintiff was treated by Hardin Memorial Hospital, he was released to the custody of Hardin County Authorities, who then transported him to the Hardin County Jail.

19. By the time of his arrival at the Hardin County Jail, Plaintiff had already begun to experience paralysis and other symptoms of a condition that ultimately developed into complete Transverse Myelitis.

20. Plaintiff was transferred to LaRue County Jail almost immediately upon arrival at Hardin County Jail.

21. By the time he arrived at the LaRue County Jail, Plaintiff was no longer able to walk.

22. On information and belief, the policies and procedures of the LaRue County Jail prohibit the admission of persons exhibiting obviously serious medical conditions. By the time of the Plaintiff's admission to the LaRue County Jail, he was at the time already exhibiting the signs and symptoms of an obviously serious medical condition, if not a full-blown medical emergency, and should have been refused admission and transferred immediately back to the hospital.

23. Throughout the relevant time period described herein, Plaintiff continuously requested medical help as his condition continued to deteriorate.

24. Plaintiff, at a minimum, was at risk for drug withdrawal, an obviously serious medical condition that can be fatal if not properly treated.

25. However, instead of medically monitoring Plaintiff, Defendants placed other inmates in the cell where Plaintiff was housed to monitor his medical condition.

26. On information and belief, the Jail's policies and procedures specifically prohibit inmates from being used to provide medical services.

27. Plaintiff requested medical attention from both the jail and medical staff and the other inmates. The inmates responsible for monitoring Plaintiff also requested medical attention from both the jail and medical staff on Plaintiff's behalf.

28. Plaintiff's and the monitoring inmates' requests for medical attention were ignored by Defendants.

29. By August 14, 2014, Plaintiff was no longer able to move his legs or arms.

30. By August 14, 2014, Plaintiff had gained a substantial amount of weight due to swelling associated with Transverse Myelitis.

31. On or about August 14, 2014, Plaintiff was found totally unresponsive in his cell.

32. On or about August 14, 2014, Plaintiff was seen by Defendant Richard/Roberta Roe, ARNP, who determined that he should go to the hospital when he was unresponsive to a blood draw. See Exhibit A.

33. Plaintiff was transported back to Hardin Memorial Hospital on or about August 14, 2014.

34. Hardin Memorial determined that due to the severity of Plaintiff's condition, they were not able to render appropriate care, and ordered him transported to University of Louisville Hospital.

35. At University Hospital, Plaintiff was formally diagnosed with quadriplegia associated with Transverse Myelitis.

36. Plaintiff was released from University Hospital on or about August 27, 2014.

37. Since that time, Plaintiff has spent a substantial amount of time in medical care facilities due to continued seizures and paralysis associated with Transverse Myelitis.

38. The prognosis of recovery from Transverse Myelitis depends in large part upon early diagnosis and treatment.

39. Contemporaneous records created by Defendants demonstrate that he was supposed to be monitored for drug withdrawal symptoms, but nothing else.

40. Upon information and belief, the symptoms of Transverse Myelitis – including but not limited to numbness and paralysis -- coincide little, if at all, with the symptoms for drug withdrawal, and are themselves independently indicative of a serious medical condition that would be obvious even to laypeople.

41. A properly trained and conscientious medical professional would have arranged for Plaintiff to be regularly and effectively monitored by him/herself or other medical professionals for the signs and symptoms of drug withdrawal and any deterioration in his condition, including but not limited to the regular and frequent taking of vital signs and subjective assessment.

42. A properly trained and conscientious medical professional would have realized that swelling and paresthesia are not common side effects of drug withdrawal.

43. A properly trained and conscientious medical professional and correctional officer would have transported Plaintiff to the hospital immediately upon report of any paresthesia.

44. A properly trained and conscientious medical professional and correctional officer would have transported Plaintiff to the hospital immediately upon discovery of his extreme swelling.

45. Instead of immediately transporting Plaintiff to the hospital upon his initial complaint of paresthesia, or at any time for two days thereafter, Defendants apparently assumed he was going through drug withdrawal, and ignored his complaints (and those of the monitoring cellmates) did nothing to treat him.

46. Upon information and belief, Plaintiff was never seen by a physician while at LaRue County Jail.

47. Plaintiff's quadriplegia and additional complications associated with Transverse Myelitis could have been prevented had Defendants met the standard of care and responded with reasonable promptness to Plaintiff's complaints. Instead, Defendants were deliberately indifferent to Plaintiff's medical condition, critically delayed the medical treatment necessary to address his obvious and serious medical needs, and Plaintiff has suffered serious, ongoing injuries as a result.

48. On information and belief, Plaintiff alleges that Defendants have a policy, custom and/or practice of treating inmates in the Jail who are experiencing drug withdrawal with deliberate indifference or, at a minimum, negligence.

## VI. Causes of Action

### A. Count I

49. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Plaintiff's life, his wanton and unnecessary pain and suffering, and his rights and the risk of harm to him occasioned by such conduct.

50. As a result of the foregoing, Plaintiff, as a consequence of Defendants' deliberate indifference and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment, needlessly endured wanton and unnecessary physical and mental pain and suffering, and was permanently injured and disabled without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### B. Count II

51. All the Defendants had a duty to timely treat Plaintiff's medical condition as would reasonable persons. Those Defendants who are health care professionals had a duty to treat Plaintiff consistent with the medical standard of care, but instead failed to provide timely attention, treatment and care and in doing so were unreasonable, fell below the acceptable medical standard of care. As a consequence, Plaintiff was subjected to wanton and unnecessary mental and physical anguish and pain and suffering, and subsequently suffered permanent and disabling injuries, and Defendants' conduct was a proximate and substantial factor in causing such damages.

52. By virtue of the foregoing, all Defendants were negligent and grossly negligent. In addition, those Defendants who are health care professionals who dealt with Plaintiff

violated the accepted medical standards of their profession and committed medical malpractice in their treatment of Plaintiff.

### C. Count III

53.     Defendants CorrectHealth, LaRue County, and Johnny Cottrill were directly responsible for Plaintiff's injuries due to their failure (a) to adequately train and supervise the Jail's officers, employees, and contractors (b) to adequately and properly staff the Jail and provide it the resources necessary to serve the needs of persons like Plaintiff, and (c) to inculcate policies, customs and practices to prevent – or to investigate, discover and change or abolish the policies, customs and practices responsible for -- the mistreatment he endured.

54.     Defendants CorrectHealth and LaRue County, in addition to their *respondent superior* liability on Plaintiff's state claims for the conduct and wrongdoing of the medical personnel they employed or with whom they contracted, were also directly responsible for Plaintiff's injuries due to their failure (a) to adequately train and supervise the medical personnel responsible for Plaintiff's care, (b) to adequately and properly staff the Jail and provide it the resources necessary to serve the needs of persons like Plaintiff, and (c) to inculcate policies, customs and practices to prevent – or to investigate, discover and change or abolish the policies, customs and practices responsible for -- the mistreatment Plaintiff endured.

### VII. Damages

55.     Plaintiff's mental and physical anguish and pain and suffering, and subsequent impairment, which may be permanent, were unnecessary and preventable. Plaintiff is entitled to recover for the wanton and unnecessary physical and mental pain and suffering he has endured and will endure, and all monetary loss he has experienced and will experience,

including but not limited to the past and future income and earnings he has lost or will lose, and the past and future medical expenses and life-care costs he has incurred or will incur, all as a consequence of Defendants' deliberate indifference to his obvious and serious medical condition. Defendants' violations of Plaintiff's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for such rights, entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

**WHEREFORE**, Plaintiff requests a trial by jury, and further requests that he be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees and all other relief to which he is entitled under law or in equity.

Respectfully submitted,

/s/ Daniel J. Canon
DANIEL J. CANON
CLAY DANIEL WALTON & ADAMS, PLC
462 South Fourth Street
Meidinger Tower, Suite 101
Louisville, Kentucky 40202
(502) 561-2005
*Counsel for Plaintiff*

Gregory A. Belzley
BelzleyBathurst Attorneys
P.O. Box 278
Prospect, KY 40059
(502)292-2452
gbelzley@aol.com

Martin A. Pohl
Hessig and Pohl, PLLC
239 S. 5th Street, Suite 711
Louisville, KY 40202
Telephone: (502) 583-5782
Facsimile: (502) 583-5785
*Counsel for Plaintiff*