UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**[Filed Electronically]**

| | |
|---|---|
| **MARILYN K. BRANHAM, Administratrix** of the estate of **BRANDON BRANHAM,** | )<br>)<br>) |
| -and- | )<br>) |
| **MELISSA STRICKLAND, Parent and Guardian of L.B.S., the minor child of BRANDON BRANHAM,** | )<br>)<br>)<br>) |
| -and- | ) Case No. 3:15-CV-647-DJH-DW<br>) |
| **MARIAH CAREY, Wife of BRANDON BRANHAM,** | )<br>)<br>) |
| **PLAINTIFFS** | )<br>) |
| v. | )<br>) |
| **CORRECTHEALTH KENTUCKY LLC , et al.,** | )<br>) |
| **DEFENDANTS.** | ) |

**FOURTH AMENDED COMPLAINT**

**I. Introduction**

1.  Marilyn K. Branham, Administratrix of the Estate of her son, Brandon Branham; Melissa Strickland, Parent and Guardian of Mr. Branham's minor child, L.B.S.; and Mariah Carey, Mr. Branham's wife; all complain of Mr. Branham's egregious and unjustifiable treatment by Defendants named herein. As more specifically set forth below, Mr. Branham, while at the LaRue County Detention Center ("the Jail") was subjected to Defendants' deliberate indifference to his medical needs and, as a consequence, was subjected to wanton and unnecessary mental and physical pain, suffering and anguish,

1

suffered from seizures and paralysis for a period of time following his injury, and then died. It is the purpose of this action to recover the actual damages Mr. Branham's estate, his minor child, and his wife sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. Jurisdiction and Venue

2. Plaintiffs seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of Mr. Branham's rights, privileges and immunities guaranteed by the Fourteenth Amendment to the Constitution of the United States.

3. This Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343.

4. Plaintiffs also seek damages for negligence and gross negligence.

5. LaRue County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. Parties

6. Mr. Branham was at all times relevant herein in the care and custody of Defendants below.

7. Defendants CorrectHealth Kentucky, LLC, and CorrectHealth LaRue, LLC (referred to collectively as "CorrectHealth"), at all times mentioned herein, were private, insured corporations responsible for employing, contracting with, training, supervising and otherwise providing medical personnel including, but not limited to, physicians, nurse practitioners, and nurses, and for creating customs, policies, practices, and procedures which their medical personnel, as well as other jail personnel, were to adhere to in providing health care services to inmates in the LaRue County Jail. CorrectHealth also

      employed, and is vicariously liable for Plaintiffs' state law claims against, Defendants Smith, Serey, Belton and Hazelwood, who were medical professionals responsible for Mr. Branham's medical care and treatment during his incarceration (collectively with CorrectHealth, "the Medical Defendants").

8. Defendant LaRue County at all times mentioned herein, was responsible for the establishment of policies, practices and procedures, either formally or by custom for, and for the employment, training, supervision and conduct of, the employees, contractors, and other personnel of the Jail, including but not limited to Defendants Cottrill, Elmore, Burd, Shoffner, Underwood, Hatcher, Puckett, Tucker, Harron, Brutscher, Martinez, Lonneman, Bennett, Jones, Skaggs, Hatcher, Whitlock, Dile, Smith, Serey, Belton and Hazelwood.

9. Defendant Johnny Cottrill was at all times mentioned herein acting individually and/or in his official capacity as Jailer of the LaRue County Detention Center, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees, contractors, and other personnel of the Jail (including but not limited to Defendants Elmore, Burd, Shoffner, Underwood, Hatcher, Puckett, Tucker, Harron, Brutscher, Martinez, Lonneman, Bennett, Jones, Skaggs, Hatcher, Whitlock, Dile, Smith, Serey, Belton and Hazelwood) and directly participated in the mistreatment of Mr. Branham described below.

10. Defendants Elmore, Burd, Shoffner, Underwood, Hatcher, Puckett, Tucker, Harron, Brutscher, Martinez, Lonneman, Bennett, Jones, Skaggs, Hatcher, Whitlock and Dile (collectively with Defendants LaRue County an Johnny Cottrill, "the Jail Defendants") were all officers and/or staff members of the LaRue County Jail who were responsible for attending to the medical needs of Mr. Branham, established policies either formally or by

      custom for, and/or were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Jail who were supposed to attend to Mr. Branham's medical needs, and/or personally participated in the mistreatment of Mr. Branham during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

11. Defendant Walter Smith, MD, was the physician at the Jail responsible for attending to the medical needs of Mr. Branham, established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Jail who were supposed to attend to Mr. Branham's medical needs (including but not limited to Defendants Serey, Belton and Hazelwood), and personally participated in the mistreatment of Mr. Branham during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

12. Defendant Lauren Serey, ARNP, was the Advanced Registered Nurse Practitioner at the Jail responsible for attending to the medical needs of Mr. Branham, established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the Jail who were supposed to attend to Mr. Branham's medical needs (including but not limited to Defendants Belton and Hazelwood), and personally participated in the mistreatment of Mr. Branham during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

13. Defendants LaTonya Belton, LPC and Amanda Hazelwood, LPN, were the medical personnel at the LaRue County Jail, employed either by CorrectHealth or by the Jail itself, who were responsible for attending to the medical needs of Mr. Branham, established policies either formally or by custom for, and/or were responsible for the employment, training, supervision and conduct of the employees of and health care professionals at the

Hospital who were supposed to attend to Mr. Branham's medical needs, and/or personally participated in the mistreatment of Mr. Branham during his incarceration at the Jail from August 12, 2014 to August 14, 2014.

### IV. Nature of Defendants' Conduct

14. At all times relevant to this Complaint, all Defendants were acting under color of state law.

15. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below.

16. Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. Branham and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages Plaintiffs are entitled to recover.

### V. Facts

17. On or about August 12, 2014, Mr. Branham was arrested for a parole violation. Because he was unconscious and exhibited signs of drug use at the time of the arrest, he was taken first to Hardin Memorial Hospital for treatment.

18. After Mr. Branham was treated by Hardin Memorial Hospital, he was released to the custody of Hardin County authorities, who then transported him to the Hardin County Jail.

19. By the time of his arrival at the Hardin County Jail, Mr. Branham had already begun to experience paralysis and other symptoms of a condition that ultimately developed into complete Transverse Myelitis.

20. Mr. Branham was transferred to LaRue County Jail almost immediately upon arrival at Hardin County Jail.

21. By the time he arrived at the LaRue County Jail ("the Jail"), Mr. Branham was no longer able to walk.

22. Prior to his admission to the Jail, Mr. Branham told Defendants that he could not walk, and had to be carried into the Jail.

23. The Jail's policies and procedures specifically prohibit someone in Mr. Branham's condition from being admitted to the Jail.

24. Mr. Branham's medical condition was obviously serious, if not a medical emergency, but the Jail's policies and procedures for handling medical emergencies was ignored.

25. No one ever saw Mr. Branham on his feet after his arrival at the Jail.

26. Throughout the relevant time period described herein, Mr. Branham continuously requested medical help as his condition continued to deteriorate.

27. Mr. Branham, at a minimum, was at risk for drug withdrawal, an obviously serious medical condition that can be fatal if not properly treated and required regular monitoring of his vital signs and objective and subjective signs and symptoms.

28. However, instead of medically monitoring Mr. Branham, Defendants placed untrained inmates outside the cell where Mr. Branham was housed to monitor his medical condition.

29. The Jail's policies and procedures specifically prohibit inmates from being used to provide medical services.

30. Mr. Branham requested medical attention from the individual Defendants identified above. The inmates responsible for monitoring Mr. Branham also requested medical attention from the individual Defendants identified above on Mr. Branham's behalf.

31. Mr. Branham's and the monitoring inmates' requests for medical attention were ignored by Defendants.

32. By August 14, 2014, Mr. Branham was no longer able to move his legs or arms.

33. By August 14, 2014, Mr. Branham had gained a substantial amount of weight due to swelling associated with Transverse Myelitis.

34. On or about August 14, 2014, Mr. Branham was found totally unresponsive in his cell.

35. There is no record of Mr. Branham ever being seen by someone qualified to diagnose and treat his condition until August 14, 2014, when he was seen by Defendant Serey, ARNP, who determined that he should go to the hospital.

36. Despite Defendant Serey's direction that Mr. Branham be taken to the hospital, he remained at the Jail almost four more hours before he was finally transported.

37. Mr. Branham was transported to Hardin Memorial Hospital on August 14, 2015.

38. Hardin Memorial determined that due to the severity of Mr. Branham's condition, they were not able to render appropriate care, and ordered him transported to University of Louisville Hospital.

39. At University Hospital, Mr. Branham was formally diagnosed with quadriplegia associated with Transverse Myelitis.

40. Mr. Branham was released from University Hospital on or about August 27, 2014.

41. Thereafter, Mr. Branham spent a substantial amount of time in medical care facilities due to continued seizures and paralysis associated with Transverse Myelitis.

42. Mr. Branham died on October 25, 2016. On information and belief, Mr. Branham's injury attributable to Defendants' misconduct caused or contributed to his death.

43. The prognosis of recovery from Transverse Myelitis depends in large part upon early diagnosis and treatment.

44. Contemporaneous records created by Defendants demonstrate that Mr. Branham was supposed to be monitored for drug withdrawal symptoms, but nothing else.

45. Upon information and belief, the symptoms of Transverse Myelitis – including but not limited to numbness and paralysis -- coincide little, if at all, with the symptoms for drug withdrawal, and are themselves independently indicative of a serious medical condition that would be obvious even to laypeople.

46. A properly trained and conscientious medical professional – whether an MD, and ARNP, an LPC or an LPN -- would have arranged for Mr. Branham to be effectively monitored by him/herself or other medical professionals for the signs and symptoms of drug withdrawal and any deterioration in his condition, including but not limited to the regular and frequent taking of vital signs and subjective assessment.

47. A properly trained and conscientious medical professional – whether an MD, and ARNP, an LPC or an LPN -- would have realized that swelling and paresthesia are not common side effects of drug withdrawal.

48. A conscientious medical professional (whether an MD, and ARNP, an LPC or an LPN) and correctional officer (regardless of their knowledge or training) would have transported Mr. Branham to the hospital immediately upon report of any paresthesia.

49. A conscientious medical professional (whether an MD, and ARNP, an LPC or an LPN) and correctional officer (regardless of their knowledge or training) would have transported Mr. Branham to the hospital immediately upon discovery of his extreme swelling.

50. Instead of immediately transporting Mr. Branham to the hospital upon his initial complaint of paresthesia, or at any time for two days thereafter, Defendants assumed he was going

> through drug withdrawal, and ignored his complaints (and those of the monitoring cellmates) and did nothing to treat him.

51. Upon information and belief, Mr. Branham was never seen by a physician while at the Jail.

52. Mr. Branham's quadriplegia and additional complications associated with Transverse Myelitis could have been prevented had the Medical Defendants met the standard of care, and/or the Jail Defendants responded as reasonable persons would to Mr. Branham's obviously serious medical condition, or acted with reasonable promptness to Mr. Branham's complaints. Instead, Defendants were deliberately indifferent to Mr. Branham's medical condition, critically delayed the medical treatment necessary to address his obvious and serious medical needs, and Mr. Branham suffered serious injuries, prolonged mental and physical pain and suffering, and death as a result.

53. On information and belief, Mr. Branham alleges that Defendants have a policy, custom and/or practice of treating inmates in the Jail who are experiencing drug withdrawal with deliberate indifference or, at a minimum, negligence.

## VI. Causes of Action

### A. Count I

54. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Branham's life, his wanton and unnecessary pain and suffering, and his rights and the risk of harm to him occasioned by such conduct.

55. As a result of the foregoing, Mr. Branham, as a consequence of Defendants' deliberate indifference and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment, needlessly endured wanton and

9

unnecessary physical and mental pain and suffering, and was permanently injured and disabled and eventually died without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### B. Count II

56. All the Defendants had a duty to timely treat Mr. Branham's medical condition as would reasonable persons. In addition, the Medical Defendants had a duty to treat Mr. Branham consistent with the medical standard of care, but instead failed to provide timely attention, treatment and care and in doing so were unreasonable, and fell below the acceptable medical standard of care. As a consequence, Mr. Branham was subjected to wanton and unnecessary mental and physical anguish and pain and suffering, and subsequently suffered permanent and disabling injuries, and eventually death, and Defendants' conduct was a proximate and substantial factor in causing such damages.

57. By virtue of the foregoing, all Defendants were negligent and grossly negligent. In addition, the Medical Defendants who dealt with Mr. Branham violated the accepted medical standards of their profession and committed medical malpractice in their treatment of Mr. Branham.

### D. Count III

58. Defendants CorrectHealth, LaRue County, and Johnny Cottrill were directly responsible for Mr. Branham's injuries due to their failure (a) to adequately train and supervise the Jail's officers, employees, and contractors, (b) to adequately and properly staff the Jail and provide it the resources necessary to serve the needs of persons like Mr. Branham, and (c) to inculcate policies, customs and practices to prevent – or to investigate, discover and

change or abolish the policies, customs and practices responsible for -- the mistreatment Mr. Branham endured.

59. Defendant CorrectHealth, in addition to its *respondeat superior* liability on Plaintiffs' state law claims for the conduct and wrongdoing of the medical personnel they employed (including but not limited to Defendants Smith, Serey, Belton and Hazelwood), were also directly responsible for Mr. Branham's injuries due to their failure (a) to adequately train and supervise the medical personnel responsible for Mr. Branham's care, (b) to adequately and properly staff the Jail and provide it the resources necessary to serve the needs of persons like Mr. Branham, and (c) to inculcate policies, customs and practices to prevent – or to investigate, discover and change or abolish the policies, customs and practices responsible for -- the mistreatment Mr. Branham endured.

## VII. Damages

60. Mr. Branham's mental and physical anguish and pain and suffering, and subsequent impairment and death, were unnecessary and preventable. Mr. Branham's estate is entitled to recover for the wanton and unnecessary physical and mental pain and suffering he endured, his loss of enjoyment of life, the loss of his power to labor and earn money, the medical expenses incurred prior to his death, and his funeral expenses, all as a consequence of Defendants' deliberate indifference to his obvious and serious medical condition. In addition, Mr. Branham's minor child and his wife are entitled to recover for the loss of Mr. Branham's love, companionship, and support. Finally, Defendants' violations of Mr. Branham's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for such rights, entitling Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future.

11

**WHEREFORE**, Plaintiffs request a trial by jury, and further request that they be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees and all other relief to which they are entitled under law or in equity.

Respectfully submitted,

*/s/ Gregory A. Belzley*
Gregory A. Belzley
gbelzley@aol.com
Camille A. Bathurst
camillebathurst@aol.com
BelzleyBathurst Attorneys
P.O. Box 278
Prospect, Kentucky  40059
(502) 292-2452

Daniel J. Canon
Clay Daniel Walton & Adams, PLC
462 South Fourth Street
Meidinger Tower, Suite 101
Louisville, Kentucky 40202
dan@justiceky.com
(502) 561-2005

Martin A. Pohl
Hessig and Pohl, PLLC
239 S. 5th Street, Suite 711
Louisville, KY 40202
martin@martinpohllaw.com
Telephone: (502) 583-5782
Facsimile: (502) 583-5785

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2017, the foregoing was filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Gregory A. Belzley*
***Counsel for Plaintiffs***